ANN SMITH v. NEW YORK, SUSQUEHANNA AND WESTERN
RAILROAD COMPANY.

1. The clause in the act relative to vice and immorality, which prohibits traveling on Sundays, does not apply to the use of those trains of cars which are authorized to be run on those days.

2. A railroad company left a loaded car, coupled with two empty cars, standing on a switch which inclined towards their main track, the same being secured by their brakes and a railroad tie placed under the wheels of the loaded car; the cars got upon the main track and thereby an accident occurred, the plaintiff being injured. *Held*, the company was not irresponsible, *as a matter of law*, even though the cars could not have got on the train track but for the wrongful act of a stranger.

On rule to show cause.

The cause was tried at the Passaic Circuit, at January Term, 1883. On Sunday evening, December 11th, 1881, the plaintiff took passage in a train of the defendant at Wortendyke, for Paterson, having in her possession a ticket which entitled her to a passage upon that train. The train started under the management of the agents of the defendant, and when within about two miles of the city of Paterson, and traveling at the rate of eighteen miles an hour or less, the passenger car in which the plaintiff was sitting came into collision with a car loaded with stone that stood upon a siding near the track on which the passenger car was running. The passenger car was thereby thrown over, and the plaintiff sustained injuries. The verdict was for the plaintiff for the sum of $10,000.

Argued at November Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the motion, *John W. Taylor.*

*Contra, John W. Griggs.*

The opinion of the court was delivered by .

BEASLEY, CHIEF JUSTICE. The plaintiff was a passenger in the car of the defendant and was hurt by an accident to the train occasioned, as she claims, by the carelessness of the agents of the company.

The first defence interposed to the suit was that the occurrence in question happened on a Sunday, and that the plaintiff on that occasion was using the cars of the defendant in violation of the law of the state. The proof showed that the plaintiff was traveling, not as a work of necessity or charity, and the position defensive to the action is that therein she offended against the first clause of the act for suppressing vice and immorality, and that consequently the defendant owed her no duty of skill or care as her safeguard whilst pursuing such forbidden occupation.

On the general subject thus adverted to the authorities are not in harmony. In some of the states a doctrine in this department is advocated which, if adopted, would be highly favorable if not conclusive for the defence, while in others the reverse view has found favor with the courts. Many of such cases are collected in the briefs of the respective counsel in this case, but such decisions will not at present be discussed, as the topic in its generality does not necessarily belong to the question now to be passed upon, for that question can be settled by an exposition of the statute which the defendant has invoked.

By the first section of the act for suppressing vice and immorality (*Rev.*, *p.* 1227) it is provided, under the sanction of a penalty, that there shall be neither traveling nor worldly employment on the Christian Sabbath, with the exception of works of necessity and charity, and this prohibition is limited by a proviso in these words viz., "That it shall and may be lawful for any railroad company in this state to run one passenger train each way over their roads on Sunday for the accommodation of the citizens of this state." The question arises, What is the proper meaning of this proviso in view of the established rules of statutory construction.

I think it plain that this exceptive clause has the effect to give, not only to the company the right to run the specified trains on Sundays, but also confers the right upon the citizen to use such trains for ordinary travel. It is by this construction alone that the clause can be rescued from a liability to the charge of being nugatory and absurd. It would seem undeniable that it was the legislative intent either to authorize the common use of the trains in question or to sanction the doing of this business by these companies founded, almost entirely, on perpetually recurring violations of law. Unless, by intendment, it is to be understood that *quoad* the trains in question, the citizen was absolved from the penalty denounced against traveling on Sunday, the boon granted to the railroads would, in substance, be the privilege of running their trains provided they carried no passengers in them. I say this, in substance, would be the effect of the concession, for the class of persons who would use such means of transit in works of necessity or charity would be comparatively so limited that their contributions to the expenses of running the trains could nave no appreciable effect. The alternative is alone presented, to hold that general travel, to the extent in question, is permitted, or that the privilege granted in the proviso is utterly useless and vain. Nothing is perceived in this act in its application to its subjects that seems to lead to the adoption of the latter branch of this alternative. The language of the proviso itself is general. The Sunday trains are to be run for the " accommodation of the citizens of this state "—that is, for their accommodation for all ordinary purposes, and not in the exceedingly restricted sense to accommodate them when engaged in works of necessity or charity. Besides, this provision is a remedial provision. It was passed in the year 1873 in the form of a supplement to the law relating to vice and immorality. The only conceivable defect existing in the old law, which it can be supposed this supplement was designed to amend, was its total prohibition of general travel on Sundays—a prohibition which, if rigidly enforced, would have put an end to all travel on the designated days in or through

this state, and thus, in a measure, placed in trammels the intercommunication between the various parts of the country. It will be thus observed that if the interpretation of this proviso, which is claimed for the defence in this case, be correct, then we have here a remedial act whose tendency is not in any degree amendatory or corrective. In short, standing on such ground, we have here a legislative act that was intended to be useless to the companies to which the privilege was given; useless to the citizens of this state, and useless to the country at large. Such a construction is opposed to all the usual legal rules applicable to the subject. The legislative intention must control, and from the nature and purpose of this proviso it was the evident design to permit the use, in ordinary travel, of these specified trains.

This point was properly disposed of by the trial judge, and the proceedings cannot be disturbed on this ground.

The second objection to the course at this trial relates to the refusal of the judge to instruct the jury in accordance with certain requests handed in on the part of the defence.

The accident giving rise to the suit had been occasioned by a car loaded with stone, coupled with three empty cars, being on the track. It was shown that these cars had been put at a safe distance on a siding, and there was testimony tending to prove that the brakes had been put on all these cars and a railroad tie placed beneath the wheels of the loaded car. The siding inclined towards the main track, and there was no direct evidence manifesting how it was these cars had come to be standing on the main track. The learned judge who presided at the Circuit, after describing this position of things, and the grounds taken by the respective parties, gave this instruction to the jury :

"It is for you to say whether, in view of these contentions, the company did all that could, in reason, be demanded of them, having in view the risks of the service in which they were engaged, or whether they failed to do what prudence, foresight and skill in that branch of the business ought to have suggested beforehand." The jury had previously been

told " that the degree of vigilance, prudence, foresight, and skill required of the company and all its employes was that which, in contemplation of the dangers of the service, a reasonably prudent person should exercise."

The court was then requested by the counsel of the defendant to charge severally the four following propositions, viz.:

" 1. That if the jury are satisfied from the evidence that if, on Sunday evening, the stone car with which the passenger car afterwards came into collision on that evening had been made fast, by means of a bar and brakes, at a safe distance from the main track, and incapable of motion towards the same, without the removal of the bar and brakes, and the application of external force, and there was no want of due diligence in stopping the train, then the defendant is not guilty of negligence, and there can be no recovery.

" 2. That if the jury are satisfied from the evidence that if, on Sunday evening and prior to the accident, the stone car had been made fast on the switch, and at such a distance from the main track as not to interfere with the trains thereon, and that the collision was produced by the loosening of the car by the unlawful act of a stranger, of which the company and its employes had no information before the collision, and there was due diligence used to stop the train, then the defendant is not guilty.

" 3. That if the jury believe that the stone car was placed where it was at the time of the accident by a stranger, between the hours of half-past five P. M. of December 11th and the time of the accident, then the defendant is not liable in this action.

" 4. That when an obstruction is placed upon a railroad by a stranger by accident or design, the company is not liable for the consequences, unless its agents have been remiss in not discovering it."

After considering carefully these requests, my conclusion is that the court did right in refusing to charge any of them in the form in which they were presented. Each of them, if adopted, committed the court to the doctrine that the action

could not be supported if the cars in question were so securely fastened that but for the intervention of extraneous force they would not have got upon the main track, or if that, they would not have done so without the unlawful action of human agency. There is no legal measure by which it can be predicated *as a matter of law,* that if a loaded car can be placed on a switch which has an inclination towards the main track, such car being so secured by its brake and a railroad tie under its wheels that it cannot change its position without the removal of such safeguards, such car is to be considered as secured with that degree of care, and skill, and prudence which the law requires to be exercised in such matters. Such a question is essentially one for the decision of the jury. The judge could not properly be called upon to pass any opinion as to the sufficiency of the means that had been employed—nor that such means were legal if they would have held the cars in position without the application of " external force."

Nor would it have been proper to have yielded to the request to tell the jury that the company was not answerable " if the collision was produced by the loosening of the car by the unlawful act of a stranger," for this would have been tantamount to saying that a railroad company has the legal right to have a loaded car on a plane inclining towards their track in such a condition that it is subject to become freed from its restraints by any unlawful intervention of human agency, though such intervention should be the mere result of accident. If a person without right were upon the property of the company, and while there, from carelessness in passing, had trod upon and dislodged the railroad tie placed to keep the car in its position, and had thus been the cause of the accident, it is clear, in the words of the request, the " loosening of the car" would have been " by the unlawful act of a stranger," and yet, I think it would not necessarily follow that the company would have been irresponsible for the consequences. I am not aware of any legal principle that would justify a railroad company in leaving loaded cars in such a situation that they could be caused to run on to its main track in the way

of its passing trains, by the carelessness of persons passing by or by the act of children playing near their switches. From the brief of counsel, it would seem that it was supposed that some of these requests raised the question how far the company would be responsible on the assumption that the cars had been properly secured, and that they had been loosened and removed to the track by the intentionally wrongful act of a stranger. But the point was not made at the trial, and probably would have had no practical effect if it had been.

The verdict cannot be opened on this ground.

Nor was the amount of damages so large that the court can say that the jury was influenced by improper considerations.

Let the rule be discharged.